USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 02/13/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AXIOM INVESTMENT ADVISORS, LLC, by  :
and through its Trustee Gildor Management, LLC, :
et al.,                                                                      :
                                                                                :
                          Plaintiffs,        :
                                                                                :     15 Civ. 9945 (LGS)
            -against-                                      :
                                                                                :     **ORDER AND OPINION**
DEUTSCHE BANK AG,                                    :
                                                                                :
                          Defendant.       :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       This putative class action arises out of Defendant Deutsche Bank AG's ("Deutsche Bank") alleged practice of delaying execution of electronically matched trade orders in the foreign exchange ("FX") market in order to take advantage of how the market moved in the interim -- a practice known as "Last Look." Plaintiffs Axiom Investment Advisors, LLC and Axiom Investment Company, LLC, by and through their Trustee Gildor Management, LLC (collectively "Axiom"), assert claims against Deutsche Bank for breach of contract, breach of the implied covenant of good faith and fair dealing, violations of N.Y. General Business Law §§ 349 and 350, and unjust enrichment. Deutsche Bank moves to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted in part and denied in part.

## I.     BACKGROUND

       For purposes of Deutsche Bank's motion, the following facts are drawn from the Complaint and documents integral to the Complaint. The facts are construed in the light most

favorable to Axiom as the non-moving party. *See Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

The FX, or foreign currency, market is the largest and most actively traded financial market in the world, with global trades averaging $5.3 trillion per day. Rather than occurring on a centralized exchange, the vast majority of FX trading is accomplished through bilateral contracts between two counterparties. In these bilateral contracts, large banks such as Deutsche Bank represent the "sell side" and act as liquidity providers or market makers. Institutional investors, asset managers, corporations, hedge funds and wealthy private investors represent the "buy side."

Today, most FX trades occur on electronic trading platforms. Electronic trading platforms display price and quantity data for various currency pairs. The price and quantity data reflect limit orders placed by liquidity providers. Because the FX market is extremely active, the limit orders are filled or withdrawn within milliseconds and replaced with new limit orders reflecting the new market price. Consequently, someone using an electronic trading platform sees a constantly updating stream of prices.

There are two general types of electronic trading platforms -- single-dealer and multi-dealer. On a single-dealer platform, a single liquidity provider places limit orders. On a multi-dealer platform, commonly referred to as an electronic communications network or "ECN," multiple liquidity providers place limit orders.

Deutsche Bank trades on both single-dealer and multi-dealer platforms. Deutsche Bank operates a single-dealer platform called Autobahn. Autobahn claims to provide "competitive and reliable prices in over 200 currency pairs" with "dynamically priced executable streaming prices customized to suit each client's requirements." From 2006 to 2011, Deutsche Bank operated a

second single-dealer platform called dbFX, which offered 34 currency pairs and "streaming real-time executable currency quotes, 24 hours a day." Deutsche Bank also participates in multiple ECNs, including Currenex, Hotspot, FXAll and 360T.

When Plaintiff or another buy-side market participant enters an order on an electronic trading platform, computer algorithms match that order to other outstanding orders on the platform. These algorithms can match orders within several milliseconds. Speed is critical because prices in the FX market can vary significantly in a second. Plaintiff alleges, however, that beginning in 2003, Deutsche Bank arranged for the matching algorithms used by Autobahn and other ECNs to include an unnecessary delay of anywhere from several hundred milliseconds to several seconds. During the delay, Deutsche Bank monitored the market movement and determined whether executing the order at the matched price would be favorable to it. If the market moved against Deutsche Bank beyond a predetermined threshold by the end of the delay period, Deutsche Bank would either reject the matched order or execute it at the new price. This practice is known as Last Look.

According to the Complaint, Deutsche Bank never directly disclosed Last Look to buy-side FX market participants who transacted on electronic trading platforms. Because the process of matching orders is undisclosed to market participants and is usually completed in less than a second, buy-side market participants have no way of knowing whether any of their trades were delayed by Deutsche Bank's use of Last Look or whether Deutsche Bank reneged on any of their matched orders. Although reports of FX liquidity providers using Last Look first surfaced "several years ago," the liquidity providers said at that time that Last Look was necessary to ensure that multiple trades were not executed on a single order. The Complaint alleges that this explanation was "pretextual and misleading" because Last Look was neither necessary to avoid

executing multiple trades on a single order nor restricted to that function. The alleged abuse of Last Look did not start receiving attention among buy-side FX market participants until the summer of 2014, when several news articles reported that liquidity providers had been accused of using Last Look "aggressively to dial up the profitability of their books."

## II.     LEGAL STANDARD

"On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn*, 795 F.3d at 306. "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) (citation omitted); *see also Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]hatever documents may properly be considered in connection with the Rule 12(b)(6) motion, the bottom-line principle is that 'once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.'" *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 563).

**III.     DISCUSSION**

As explained below, Deutsche Bank's motion to dismiss is granted as to Axiom's claims for breach of the implied covenant of good faith and fair dealing (Count III), deceptive trade practices (Count IV), false advertising (Count V) and unjust enrichment based on transactions that occurred on Autobahn (Count VI), but denied in all other respects.

    **A.     Breach of Contract - Counts I and II**

On a motion to dismiss for breach of contract, courts look not only at the sufficiency of the complaint but also at the contract itself, which by definition is integral to the complaint. *See Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (in action for breach of contract, noting that "[w]here, as in this case, certain contracts are integral to the complaint, we also consider those documents in deciding the merits of the motion"). Courts "are not obliged to accept the allegations of the complaint as to how to construe [the contract], but at this procedural stage, we should resolve any contractual ambiguities in favor of the plaintiff." *Subaru Distributors*, 425 F.3d at 122. Thus, if the pleading is sufficient and the plaintiff has an arguable claim under the contract, then the claim should not be dismissed. *See, e.g.*, *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 56 (2d Cir. 2012) (reversing dismissal of contract claim where relevant provision was ambiguous and plaintiff's reading was plausible). However, if the relevant contract provisions are unambiguous and plaintiff has no claim under them, then the claim should be dismissed. *See, e.g.*, *Keiler v. Harlequin Enterprises Ltd.*, 751 F.3d 64, 69 (2d Cir. 2014) (affirming dismissal of contract claims where relevant contract provision was unambiguous). Based on these legal principles, Deutsche Bank's motion to dismiss is denied as to Axiom's claims for breach of contract for transactions on Autobahn (Count I) and on other ECNs (Count II).

### 1. Autobahn - Count I

Count I of the Complaint sufficiently states a claim for breach of contract arising out of transactions on Autobahn because the applicable agreement between the parties does not unambiguously permit Last Look.

Axiom's claim is governed by the Autobahn Terms and Conditions, which by their terms "apply to the use of the Autobahn FX service . . . and the transactions resulting therefrom." Although submitted by Deutsche Bank and not referenced in or attached to the Complaint, the Terms and Conditions are integral to the Complaint and may be considered in deciding Deutsche Bank's motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotation marks and citation omitted)).

"The threshold question in a dispute over the meaning of a contract is whether the contract terms are ambiguous. Under New York law, the meaning of a contract that is unambiguous is a question of law for the court to decide." [1] *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000). A contract is ambiguous if its terms "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010) (internal quotation marks omitted). On the other hand, "[n]o ambiguity exists where the contract language has a

---

[1] This Opinion applies New York law because the parties do. *See, e.g.*, *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) ("The parties' briefs assume that New York substantive law governs the issues . . . presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law.").

definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Id.* at 467 (alteration in original) (internal quotation marks omitted); *accord Banco Espirito Santo, S.A. v. Concessionaria Do Rodoanel Oeste S.A.*, 951 N.Y.S.2d 19, 24 (1st Dep't 2012).

A court's primary objective in interpreting a contract is "to give effect to the intent of the parties as revealed by the language of their agreement." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000). A contract should be read as a whole "to ensure that undue emphasis is not placed upon particular words and phrases" and "to safeguard against adopting an interpretation that would render any individual provision superfluous." *Law Debenture Trust Co.*, 595 F.3d at 468 (internal quotation marks omitted). "The words and phrases in a contract should be given their plain meaning . . . ." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co.*, 773 F.3d 110, 114 (2d Cir. 2014) (internal quotation marks omitted).

Schedule 1 to the Terms and Conditions sets forth the procedures for FX trading through Autobahn. Deutsche Bank "may supply streaming prices," which "shall be effective and may be used in a trade instruction prior to the earlier of its expiration time and the time, if any, at which it is otherwise withdrawn."[2] Customers, such as Axiom, may input a trade instruction, which under the November 2003 version of the Terms and Conditions "constitutes an offer to enter into a Transaction."[3] Deutsche Bank may execute or reject a Customer's trade instruction "at its discretion in accordance with the criteria set forth in this Agreement." As relevant here, those criteria include that "[t]he price shall have expired or has been withdrawn." A binding

---

[2] These terms are substantially similar in all four versions of the Terms and Conditions that were submitted by Deutsche Bank.
[3] Later versions of the Terms and Conditions omit this language.

agreement to trade arises when a trade instruction is executed, "which shall occur upon receipt of such instruction by Bank and verification by Bank that such instruction complies with the requirements of these Terms and Conditions."

Whether these provisions permit Last Look depends on the moment at which compliance with Deutsche Bank's criteria for trade instructions is to be measured. Deutsche Bank argues that the determinative moment is execution, meaning that it can reject a trade instruction if the price expires or is withdrawn at any time before it executes the trade instruction. For support, Deutsche Bank notes that no binding agreement to trade exists prior to execution. Axiom contends that the moment Deutsche Bank receives the trade instruction from the matching algorithm is determinative; Deutsche Bank can only look backward from that moment to determine whether the price has expired or was withdrawn. In support, Axiom cites the provision in the Terms and Conditions that states: "Execution of a trade instruction . . . shall occur upon receipt . . . and verification by Bank that such instruction complies with the requirements of these Terms and Conditions." Because both interpretations are reasonable, the Terms and Conditions are ambiguous with respect to the timing of the criteria compliance check and, thus, the permissibility of Last Look. *See Law Debenture Trust*, 595 F.3d at 466.

Deutsche Bank argues that even if the Terms and Conditions are ambiguous with respect to Last Look, any claim for damages arising from its alleged failure to execute trade instructions is barred by the "Limitation of Liability" contained in the Terms and Condition. This argument fails. Deutsche Bank raised this argument for the first time in its reply brief, and for that reason alone the argument may be rejected. *See Knipe v. Skinner,* 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); *Cruz v. Zucker*, 116 F. Supp. 3d 334, 349 n.10 (S.D.N.Y. 2015) (declining to address arguments raised for the first time in

reply brief). In any event, the Limitation on Liability is not clearly applicable to Axiom's claims as it excludes cases of "wilful misconduct," which the alleged use of Last Look might be.[4] Since the Terms and Conditions are ambiguous regarding Last Look, Deutsche Bank's motion to dismiss is denied with respect to Count I.

### 2. Other ECNs - Count II

The Complaint also sufficiently states a claim for breach of contract arising out of transactions on other ECNs. "To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *accord Harris v. Seward Park Hous. Corp.*, 913 N.Y.S.2d 161, 162 (1st Dep't 2010). Here, the Complaint alleges that an implied-in-fact contract to trade arose whenever the parties' complementary orders were matched by the electronic trading platform's algorithm; that Axiom performed under those contracts; that Deutsche Bank, through its use of Last Look, delayed and reneged on some of those contracts; and that the delay damaged Axiom by causing its orders to be filled at prices less favorable to it. As these allegations state a claim for breach of contract, Deutsche Bank's motion to dismiss Count II of the Complaint is denied. *See Harsco*, 91 F.3d at 348; *Jemzura v. Jemzura*, 330 N.E.2d 414, 420 (N.Y. 1975) ("A contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words . . . . It is just as

---

[4] In the version of the Terms and Conditions dated November 2014 there is no exception for "wilful misconduct." Rather, in this version the Limitation of Liability applies "[t]o the full extent permitted by applicable law" except that "[n]othing in these platform terms excludes or limits Bank's or a Service Provider's liability for fraud." It is unnecessary to decide whether this version of the Terms and Conditions bars any claim for damages because Deutsche Bank does not cite or discuss this version in either of its briefs.

binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct.") (citations omitted).

In contrast to the Autobahn Terms and Conditions, there appears to be no express contract between the parties underlying the ECN transactions. The two "Service Agreements" submitted by Deutsche Bank are not integral to the Complaint and are disregarded for purposes of this motion. Each Service Agreement is between Deutsche Bank and an ECN operator -- not Axiom, an ECN user. Nothing in the Complaint or on the face of the Service Agreements indicates that Axiom agreed to their terms. To the contrary, one of the Service Agreements states that the ECN's users "shall enter into an agreement . . . with Deutsche Bank . . . that contains terms applicable to transactions with Deutsche Bank effected through the [ECN]." Because these Service Agreements do not appear to govern Axiom's breach of contract claim for transactions on these two or any other ECN, the agreements are not integral to the Complaint and cannot be considered in deciding Deutsche Bank's motion to dismiss. *See Chambers*, 282 F.3d at 153. Without the Service Agreements, the sufficiency of Axiom's claim for breach of contract on other ECNs depends solely on the allegations in the Complaint, which are sufficient to state a claim.

    **B.**  **Breach of Implied Covenant of Good Faith and Fair Dealing - Count III**

Axiom's claim for breach of the implied covenant of good faith and fair dealing is dismissed as redundant. "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002). A breach of the covenant is a breach of the underlying contract. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013). Accordingly, "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith

and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Id.* (citation omitted). Because Axiom does not dispute this principle of law, and concedes that the claim is based on the same facts as its breach of contract claims, the claim for breach of the implied covenant is dismissed.

        **C.**      **Consumer Protection Act - Counts IV and V**

Axiom's claims for deceptive trade practices (Count IV) and false advertising (Count V) in violation of New York's Consumer Protection Act, N.Y. Gen. Bus. Law §§ 349, 350, fail as a matter of law because FX trading on Autobahn or other ECNs is not consumer-oriented conduct.

To state a claim for deceptive trade practices under § 349, a plaintiff must allege three elements: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000). "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to [§] 349." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002). Thus, a plaintiff asserting a claim under either of these sections "must, at the threshold, charge conduct that is consumer oriented." *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 770 (N.Y. 1995).

Conduct is consumer oriented if it has "a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995). "Consumers," in this context, are "those who purchase goods and services for personal, family or household use." *Sheth v. N.Y. Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (1st Dep't 2000). A plaintiff need not be a consumer to bring a claim under § 349 or § 350, but the challenged conduct must affect consumers. *Blue Cross & Blue Shield of N. J., Inc. v. Philip*

11

*Morris USA Inc.*, 344 F.3d 211, 218–19 (2d Cir. 2003).  Transactions between businesses or sophisticated parties that do not affect average consumers do not constitute consumer-oriented conduct.  *See, e.g.*, *N.Y. Univ.*, 662 N.E.2d at 770 (denial of university's claim under commercial crime insurance policy); *Med. Soc. of State of N.Y. v. Oxford Health Plans, Inc.*, 790 N.Y.S.2d 79, 80 (1st Dep't 2005) (health insurers' conduct toward physicians); *Denenberg v. Rosen*, 897 N.Y.S.2d 391, 396 (1st Dep't 2010) (professional services for design and implementation of individual private pension plan).  Courts have held that securities transactions also are not consumer oriented, in part because "individuals do not generally purchase securities in the same manner as traditional consumer products."  *Gray v. Seaboard Sec., Inc.*, 788 N.Y.S.2d 471, 472 (3d Dep't 2005).

Electronic FX trading is not consumer-oriented conduct.  Individuals do not trade FX the way they purchase traditional consumer products.  Similar to securities, FX is traded "as investments, not as goods to be 'consumed' or 'used.'"  *Gray*, 788 N.Y.S.2d at 472.  The average consumer is even less likely to transact in FX than in some securities because, as the Complaint alleges, the vast majority of FX trading occurs "over the counter" between two counterparties rather than on a centralized exchange.  According to the Complaint, the counterparties in FX transactions are sophisticated market participants -- large banks on the sell side and "institutional investors, asset managers, corporations, hedge funds, and wealthy private investors" on the buy side.  The Complaint therefore does not plausibly allege that conduct related to electronic FX trading has "a broader impact on consumers at large."  *Oswego*, 647 N.E.2d at 744.  Deutsche Bank's motion to dismiss is granted with respect to Counts IV and V.

D. **Unjust Enrichment - Count VI**

Deutsche Bank's motion to dismiss Axiom's unjust enrichment claim is granted with respect to the Autobahn transactions and denied with respect to transactions on other ECNs.

"The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement." *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005). "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987). Here, it is undisputed that Axiom's unjust enrichment claim arises out of the same subject matter as its breach of contract claims. *See* Pl.'s Mem. at 17 ("[T]he unjust enrichment count is an alternative to the breach of contract count."). As discussed above, the claim for breach of contract on Autobahn is governed in the first instance by the Terms and Conditions. Because Axiom has not challenged the validity or enforceability of the Terms and Conditions, the unjust enrichment claim is duplicative to the extent it applies to Autobahn.

As to transactions on the other ECNs, however, no express contract governing Axiom's claim has been proffered. Axiom is proceeding instead on an implied contract theory. Because it is possible that no valid and enforceable contract applicable to other ECNs will be found to exist, the unjust enrichment claim may stand if it is adequately pleaded. *See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N. J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (dismissing unjust enrichment claim, pleaded in the alternative, after determining that valid, enforceable implied-in-fact contract governed the dispute); *Nakamura v. Fujii*, 677 N.Y.S.2d 113, 116 (1st Dep't 1998) (in case involving an alleged oral contract, holding that "where . . . a

13

bona fide dispute exists as to the existence of the contract, the plaintiff may proceed on both breach of contract and quasi-contract theories").

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr.*, 448 F.3d at 586 (citation omitted). The Complaint pleads those elements by alleging that Deutsche Bank delayed and, when the market moved against it, reneged on matched orders, thereby usurping the profit that would have gone to Axiom if the matched order had been executed immediately. The Complaint therefore states a claim for unjust enrichment as an alternative to the claim for breach of contract for transactions on other ECNs.

### E.     Statute of Limitations

Deutsche Bank's motion to limit the period for which Plaintiff can recover damages based on the statute of limitations is denied based on the doctrine of equitable estoppel.

"Because the statute of limitations is an affirmative defense, Defendants carry the burden of showing that Plaintiff[s] failed to plead timely claims." *Demopoulos v. Anchor Tank Lines, LLC*, 117 F. Supp. 3d 499, 507 (S.D.N.Y. 2015); *see Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("The lapse of a limitations period is an affirmative defense that a defendant must plead and prove." (citing Fed. R. Civ. P. 8(c)(1))). Accordingly, dismissal based on an affirmative defense at the complaint stage is warranted only if "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Id.* (emphasis omitted) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

14

Although breach of contract claims generally are subject to a six-year statute of limitations under New York law, the limitations period is four years where, as here, the contract is governed by Article 2 of the Uniform Commercial Code ("UCC").  N.Y. C.P.L.R. § 213(2); N.Y. U.C.C. § 2-725(1); *Intershoe, Inc. v. Bankers Trust Co.*, 571 N.E.2d 641, 644 (N.Y. 1991) ("There seems to be no question that the UCC applies to foreign currency transactions.").  For unjust enrichment claims, the limitations period is three years where, as here, the plaintiff seeks monetary damages.  *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 272 (N.Y. 2009) (citing C.P.L.R. § 214(4)).  Axiom commenced this action on December 21, 2015.  Thus, damages for any breach of contract that occurred prior to December 21, 2011, or for any wrongful act giving rise to a claim for unjust enrichment that occurred prior to December 21, 2012, appear to be time barred on the face of the Complaint.

These damages survive this motion to dismiss to account for the tolling of the statute of limitations from the time that Deutsche Bank induced Axiom to refrain from filing the Complaint until the summer of 2014 when Axiom was again on notice of its claims.  *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 341 (E.D.N.Y. 2012) ("[O]nly misrepresentations occurring during the limitations period are relevant; equitable estoppel cannot revive a claim that is already time-barred.") (citing *Powers Mercantile Corp. v. Feinberg*, 490 N.Y.S.2d 190, 193 (1st Dep't 1985).  As the Complaint plausibly alleges that Deutsche Bank fraudulently concealed its use of Last Look, equitable estoppel may apply to prevent Deutsche Bank from asserting a statute of limitations defense.  "The doctrine of equitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense." *Zumpano v. Quinn*, 849 N.E.2d 926, 929 (N.Y. 2006).  Equitable estoppel applies where the defendant induced the plaintiff "by fraud, misrepresentations or deception to refrain from filing a timely action" and the

15

plaintiff reasonably relied on the defendant's misrepresentations.  *Id.*  (citation omitted).  Additionally, the plaintiff must establish that "subsequent and specific actions by defendants somehow kept them from timely bringing suit"; it is not enough that the defendant was aware of the wrong and remained silent.  *Id.*  In other words, "the misrepresentation or concealment supporting an estoppel argument must be distinct from the underlying claim."  *Clement v. Farmington Cas. Co.*, No. 13 Civ. 1026, 2015 WL 6971565, at *4 (S.D.N.Y. Nov. 10, 2015) (applying New York law).  On a motion to dismiss, in order to save a facially barred claim, a plaintiff must come forward with facts that would show equitable estoppel.  *Doe v. Holy See (State of Vatican City)*, 793 N.Y.S.2d 565, 568 (3d Dep't 2005) ("In opposition to [the] defendants' motions to dismiss upon the affirmative defense, it was incumbent upon [the] plaintiffs to come forward with facts in support of equitable estoppel.").  Plaintiff must also establish "[d]ue diligence . . . in bringing [his] action . . . within a reasonable time after the facts giving rise to the estoppel have ceased to be operational."  *Doe*, 793 N.Y.S.2d at 569 (internal quotation marks omitted).

Here, the Complaint alleges that Deutsche Bank not only failed to disclose Last Look but fraudulently concealed its use and purpose.  The Complaint states that when reports of Last Look in FX trading first emerged "several years ago," Deutsche Bank claimed that Last Look was necessary to counteract the risk of having its order executed on more than one platform, even if it intended to enter only one transaction on those terms.  This explanation was misleading, according to the Complaint, because it suggested that Deutsche Bank used Last Look to reject trades only when the order had already been filled elsewhere.  Additionally, the Complaint alleges that Axiom had no way of knowing that its trades were being delayed and sometimes rejected because the process of matching orders and executing trades happens in less than a

16

second and is not disclosed.  Viewed in a light most favorable to Axiom, these allegations suggest that Deutsche Bank induced Axiom to refrain from filing a lawsuit when it first learned of Last Look by providing a misleading explanation of the practice on which Axiom reasonably relied.  *See Zumpano*, 849 N.E.2d at 929 (finding it "fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit").  The Complaint also alleges that Axiom acted with reasonable diligence commencing this action in December 2015 following news reports in the summer of 2014 about the abuse of Last Look.  Deutsche Bank's motion to dismiss Axiom's surviving claims to the extent they seek damages beyond the applicable statute of limitations is therefore denied.

**IV.    CONCLUSION**

For the foregoing reasons, Deutsche Bank's motion to dismiss is GRANTED as to Axiom's claims for breach of the implied covenant of good faith and fair dealing (Count III), deceptive trade practices (Count IV), false advertising (Count V) and unjust enrichment based on transactions that occurred on Autobahn (Count VI) but not transactions on other ECNs.  The motion is DENIED in all other respects.

The Clerk of Court is directed to close the motion at Dkt. No. 50.

SO ORDERED.

Dated:  February 13, 2017
         New York, New York

                                  LORNA G. SCHOFIELD
                                  UNITED STATES DISTRICT JUDGE