**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AXIOM INVESTMENT ADVISORS, LLC, by and through its Trustee, Gildor Management, LLC, and AXIOM INVESTMENT COMPANY, LLC, by and through its Trustee, Gildor Management, LLC,<br><br>        Plaintiffs,<br><br><br>        - against -<br><br><br>DEUTSCHE BANK AG,<br>        Defendant. | Case No. 15 Civ. 9945 (LGS) |

**SUPPLEMENTAL DECLARATION OF CRAIG BEEVERS IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1.    I, Craig Beevers, declare and state as follows:

2.    I make the following statements on the basis of my own personal knowledge.  If called as a witness, I could and would competently testify to the matters stated herein.

I.    INTRODUCTION AND SCOPE

3.    I make this Supplemental Declaration in further support of Plaintiff's motion to certify the class, and to respond to incorrect or misleading statements contained in Deutsche Bank's brief and the Declarations of Professor Hendershott and Mr. Weisberg.

4.    My qualifications, compensation and previous testimony are set forth in my Initial Declaration and, for brevity, are not repeated here.

5.    Deutsche Bank contests the opinion stated in my previous declaration that it used its trade acceptance practices of using prices generated post-receipt of a trade instruction to "refuse to complete those trades it determined to be likely unprofitable in that moment." Beevers Decl. at ¶ 13. However, the record is replete with evidence that Deutsche Bank utilized DTA as a tool to maximize both flow and profits. Carter sought to "find the optimal* pipwaiver and DTA setting – maximizing valuation PnL while controlling rejects." Zig. Weis. Decl. Ex. 2; see also, Zig. Weis. Decl. Ex. 3 at 558 (trader wrote code to assess optimal DTA/pip waiver combination, noting the "break even" point for various DTA settings)  Deutsche Bank eventually developed the "ARM simulate TA" module, which enabled it to predict the profitability of various DTA and pip waiver combinations. Zig. Weis. Decl. Ex. 4.

6.    Deutsche Bank has also claimed that DTA was necessary to protect it from clients who would otherwise trade on stale prices. However, since at least 2008 (DB-Axiom_02422856), and continuing on RAPID today (DB-Axiom_02418431), Deutsche Bank has used a combination of two checks, "time-to-live" ("TTL") and "connectivity buffer" ("CB"), to determine if a client is seeking to trade on a quote that has been replaced. Zig. Weis. Decl. Ex. 6. The analysis discussed in my original Declaration utilizes Deutsche Bank's TTL data to determine whether a client's trade request seeks to trade on a price that had been superseded or withdrawn prior to its receipt (Beevers Decl. ¶¶ 16-17, 25)

7.    Deutsche Bank also claims that it has no evidence that it rejected an otherwise valid trade request on the basis of a price generated after its receipt through an ECN on behalf of Axiom. However, comparing Axiom's trade logs with Deutsche Bank's trade data allows for the

1

identification of many Axiom ECN trades that were rejected on the basis of post-receipt prices by Deutsche Bank.

8.  Axiom's log of completed trades records the time, amount, direction, nominal amount and venue of completed trades. Comparing those data points to the Deutsche Bank trade data allows for the identification of numerous trades placed over an ECN in the same amount, direction and time rejected by Deutsche Bank. Using this method, we were able to identify 92 Axiom trades transmitted through an ECN that were rejected on the basis of Deutsche Bank's use of post-receipt price checks that are reflected in Exhibit 1 to this declaration.

I declare under penalty of perjury that the forgoing is true and correct.

_____
Craig Beevers

Executed on Monday, April 9, 2018

2



